NATIONAL BUILDING AND LOAN ASSOCIATION OF NEW YORK *v.* JOHN M. WILSON, ADMINISTRATOR.

1. USURY.   *Building and loan associations.*

   The contract of a nonresident building and loan association stipulating for 6 per centum per annum, as interest, and 6 per centum per annum as a fixed premium, payable in monthly installments, is usurious.   *Sokoloski* v. *Association,* 77 Miss., 155 ; *Crofton* v. *Association, Ib.,* 166.

2. SAME.   *Foreign association.   Localization.   Agent.*

   When a nonresident building and loan association carries on its business in this state, through local agents, instead of local boards, but does so in all other respects, substantially in the manner considered in *Shannon* v. *Association, ante* p. 955, its loans made in this state and secured by deeds of trust on land in this state, are subject to the usury laws of this state, although the contracts contain a stipulation that the loans shall be payable in the state of its domicile.

3. SAME.    *Branch.    Agency.    Privilege tax.    Laws* 1890, p. 10.

   As manifested by the act imposing privilege taxes (laws 1890, p. 10),
   "branches" and "agencies" of foreign building and loan associa-
   tions are the same in legislative contemplation, and each is re-
   quired to be treated as a separate and distinct building and loan
   association.

FROM the circuit court of Lauderdale county.

HON. GREEN B. HUDDLESTON, Judge.

Wilson, administrator, appellee, was the plaintiff and the
National Building and Loan Association, appellant, defendant
in the court below.    The opinion states the controlling facts of
the case.

*Mayes & Harris,* for appellant.

In the New South contract the premium was directly and
indissolubly connected with the loan.    In this contract it is
directly and plainly connected with the stock maturity as dis-
tinguished from the loan, and there is a full participation in
this question of the obligation to pay premium of the member
both in his capacity of the borrower, on the one hand, and the
investor, on the other.    We earnestly invite the careful con-
sideration of this point by the court.    It is deserving of the
court's attentive thought, in our opinion.

The appellant was a New York company, domiciled there,
with no branch and no general agent in the State of Mississippi,
while even its special agent in the State of Mississippi was
authorized to do nothing except to receive the applications for
contracts and forward the same to New York, and collect dues,
interest, premiums, and remit the same.    Also, the contracts
were, in fact, approved, passed, drawn and prepared in New
York; also, the bond which Mrs. Shearer executed for the
money borrowed by her stipulated that the payments were all
to be made " at the office of the association in New York city;"
also, the bond and the mortgage both expressly stipulated that
such bond and mortgage, respectively, were " made with ref-
erence to and under the laws of the State of New York, which

are to govern in enforcing and expounding this contract.'' The facts indubitably locate the contract as a New York contract under all of the authorities. *Hievanymous* v. *B. & L. Asso.*, 101 Fed. Rep., 12. Nor does the fact that the mortgage was executed on real estate located in Mississippi affect the question. *Hievanymous* v. *B. & B. Asso.*, 101 Fed. Rep., supra; *Mortgage Co.* v. *Jefferson*, 69 Miss., 770.

The fact that there was a special agent in Mississippi who was authorized to receive payment of the monthly dues of the premium and interest and remit the same to the company, was a mere matter of convenience to the members of the association, of which such members were under no obligations whatever to avail themselves. The member, whether investor or borrower, or both, had, under the contracts and under the charter by-laws, no right whatever to make such payments in Mississippi; and in which respect this matter differs essentially from the conditions in the Sokoloski case, for there, as we have already shown, the members had a right fixed by contract to make such payments through the local treasurer of the local board or branch.

Nor does the case of *Mortgage Co.* v. *Jefferson*, 69 Miss., supra, in any way militate against the proposition herein submitted. It is true that this court in that case declared that the parties to the contract could not, even by a special provision inserted in the contract to that purpose, locate the same in Mississippi so that the same ''should be construed according to the laws of the state of Mississippi.'' But the court expressly put its decision on the proposition that the contract was made in the city of Memphis, Tenn., between Mr. Jefferson, who was a resident of Tennessee, and the agent of the loan company, who was also a resident of Memphis, and also that the contract was to be performed in New York, the notes all being payable at the Corbin Bank in that city, and also that the contract made was usurious, both by the law of Tennessee and by the laws of New York.

In the case at bar, there is no averment in the pleadings, and there is no proof in the record, that this stipulation that the contract should be a contract under the laws of New York and determined thereby, was made with a design to evade the usury laws of Mississippi. Indeed, the proof shows otherwise, because it is expressly testified that the contract made with Mrs. Shearer was just such a contract as was made with other shareholders scattered throughout nine states.

That the burden is on a borrowing member of a building and loan association to show his loan usurious, see *Building Asso.* v. *Froelich* (Iowa 1900) 81 N. W. Rep., 449; and of course the burden being on the borrower to show the usury, it is on him to show all those facts which constitute the usury.

It was said in the Sokoloski case, that, "If the New South Building and Loan Association be authorized by the legislature of the State of Louisiana to take fixed premiums, yet, such legislation could not have any operation in the State of Mississippi, and the taking of a fixed premium of six per centum, with interest at the rate of six per centum added, is usurious.

"A domestic building and loan association is authorized by our law to exceed the legal rate of interest, but such is not allowed to a foreign building and loan association, and comity would not authorize an association of the last named kind to make contracts here, which, under our jurisprudence, are held to be usurious."

The foregoing statement does not, we submit, apply to this case. It was made in respect to a contract, as we have before shown, which was, in point of fact, made in this state and located in this state, and was to be performed in this state ; it was made through a local board at Hazlehurst, with a charter furnished by the parent society of New Orleans, and Sokoloski had a contract right through the by-laws to make all of his payments in Hazlehurst to the local treasurer, an entirely different contract from the one at bar, as we have previously pointed out. The difference in the nature of the contract, the

court clearly had in mind, because the thing which it denies, is the right of a foreign building and loan association "to make contracts here" which, under our jurisprudence, are held to be usurious. Our contract was not made here in any sense to which this observation and denial of right should properly apply.

*Cochran & Bozeman,* on the same side.

The application for the loan was made to the association at its office in New York, and was considered and granted there. The granting of this application was the consummation or completion of the contract, and, as this was done in New York, it follows necessarily that the contract was made there. *Guarantee, etc., Co.* v. *Alexander,* 96 Fed. Rep., 870 (decided in July, 1899); 7 Am. & Eng. Enc. L., 136; *Shattuck* v. *Ins. Co.,* 4 Cliff., 598. We contend that the contract is a New York contract, to be governed by the laws of New York, because New York is the place of performance, it being expressly provided in the bond, assignment, and mortgage, and also in the articles of association, which together constitute the contract, that all payments are to be made to the association at its office in the city of New York. The general principle that we rely upon was laid down by Chief Justice Taney in the leading case of *Andrews* v. *Pond,* 13 Pet., 65; see, also, *Miller* v. *Tiffany,* 1 Wall., 695; Story on Conflict of Laws, secs. 287, 293, 303; 2 Kent Comm., 459. Nor is this rule affected by the fact that this loan is secured by a mortgage on realty in another state. *De Wolff* v. *Johnson,* 10 Wheat., 377; Story on Conflict of Laws, secs. 287, 293, 303. This rule has been applied to building and loan contracts like the one at bar, and the contracts, though usurious by the laws of the place of execution, have been held valid under the laws of the place of performance by the highest courts of the states of Alabama, Virginia, Arkansas, Tennessee, South Carolina, West Virginia, and Pennsylvania, and by the United States courts sitting in Texas, Ar-

kansas, North Carolina, and South Carolina, which constitute the great weight of authority on the subject. *Association* v. *Vance*, 49 S. C. 402, s. c. 27 S. E., 274; *Association* v. *Hoffman*, 27 S. E., 692; *Tobin* v. *McNab*, 53 S. C., 73, s. c. 30 S. E., 827; *Pioneer*, etc., *Co.* v. *Cannon*, 96 Tenn., 599, s. c. 36 S. W., 386; *Association* v. *Ashworth*, 91 Va., 706, s. c. 22 S. E., 521; *Nickles* v. *Association*, 93 Va., 380, s. c. 25 S. E., 8; *Ware* v. *Bankers*, etc., *Co.*, 95 Va., 680, s. c. 29 S. E., 744; *Association* v. *Tinsley*, 96 Va., 322, s. c. 31 S. E., 508; *Gowan* v. *Association*, 33 S. E., 553; *Hayes* v. *Association*, 26 So. Rep., 527; *Bennett* v. *Association*, 177 Pa. St., 233, s. c. 35 Atl., 684; *Archer* v. *Association*, 45 W. Va., 37, s. c. 30 S. E., 241; *Farmers'*, etc., *Co.* v. *Bazore*, 54 S. W., 339; *Association* v. *Logan*, 60 Fed. Rep., 827; *Andrews* v. *Association*, 94 Fed. Rep., 576; *Brower* v. *Association*, 86 Fed. Rep., 748; *Guarantee Co.* v. *Alexander*, 96 Fed. Rep., 870; *Association* v. *Rector*, 98 Fed. Rep., 171. This rule is the rule in Mississippi also, and has been often applied by our supreme court to other than building and loan contracts. In *Martin* v. *Martin*, 1 Smed. & M., 176, the court held that a note executed in Mississippi, but payable in Louisiana, is governed as to the rate of interest by the laws of the state of Louisiana—that is, "the law of the place where, by its terms, it is to be performed." To the same effect see *Henry* v. *Halsey*, 5 Smed. & M., 573; *Fellows* v. *Harris*, 12 Smed. & M., 462; *Barnett* v. *White*, 5 George, 56. The leading case in Mississippi on this point is *Brown* v. *Freeland*, 5 George, 181, approved, in *Bank* v. *Auze*, 74 Miss., 622.

To hold that the contract at bar is not a New York contract would be a radical and revolutionary departure from this well established rule of our supreme court. On this point we call the court's especial attention to the case of *Association* v. *Ashworth*, 91 Va., 706, s. c. 22 S. E., 521.

The place where the contract in question was to be performed being the State of New York, it is governed by her usury laws.

Chapter 122 of the laws of New York, passed April 10, 1851, entitled, "An act for the incorporation of building, mutual loan and accumulating fund associations," together with amendments made thereto, are properly proved and filed in the case. Section 7 of this act, as amended by act of June 9, 1875, contained this provision: "Nor shall the imposition of fines for the nonpayment of fines or fees, or other violations of the articles of association, nor shall the making of any monthly payments required by the articles of association or any premium for loans made to members be deemed a violation of the provisions of any statute against usury." *Association* v. *Read*, 93 N. Y., 474. We call the court's attention, also, to the case of *Bennett* v. *Association*, 177 Pa. St., 233, s. c. 35 Atl., 684.

We contend that the contract is to be governed by the laws of the State of New York, because the parties have expressly contracted, by the concluding sentence in the bond and mortgage, that the contract is made with reference to, and under the laws of the State of New York, and that they are to govern in enforcing and expounding this contract.

We contend that the contract is not usurious even under the laws of Mississippi, in the absence of statutory exceptions in favor of building and loan associations domiciled elsewhere, because it is a building and loan association contract, and because, under the contract and articles of association, Mrs. Shearer, the borrower, was entitled to and did share in the profits of the association during the continuance of her loan in the same proportion as all other shareholders, whether borrowers or not. Endlich on B. and L. Ass'ns, (2 Ed.) sec. 329 ; *Pattison* v. *Associaition*, 63 Ga., 373 ; *Reeves* v. *Association*, 56 Ark., 335 ; s. c. 19 S. W., 817 ; *New Jersey, etc., Co.* v. *Bachelor*, 54 N. J. Eq., 600 ; s. c. 35 Atl., 745 ; *Richard* v. *Association*, 49 La. Ann., 481 ; s. c. 21 So. 643 ; *Archer* v. *Association*, 45 W. Va., 37 ; s. c. 30 S. E., 241 ; *Hayes* v. *Association*, 27 So. Rep., 527 ; Falls case, 97 Ala., 417 ; s. c. 13 So., 25. .

And this honorable court has properly recognized and upheld the building and loan aesociation contract because of its mutuality. *Goodman* v. *Association*, 71 Miss., 310.

The Sokoloski and Crofton cases, 77 Miss., 155 and 166, and 26 So. Rep., 361, relied upon particularly by the appellee, are not decisive of the case at bar, but are clearly to be differentiated from it.

In the absence of statutory restrictions the charging of a fixed premium is perfectly legal and proper. *New Jersey, etc., Co.* v. *Bachelor*, 84 N. J. Eq., 600 (35 Atl., 748); *Asso.* v. *Stephens*, 26 N. J. Eq., 355; *Asso.* v. *Heimback* (Minn.), 79 N. W., 609; *Archer* v. *Asso.*, 45 W. Va., 37 (30 S. E., 242); *Eagle, etc., Co.* v. *Samuels*, 60 N. Y. Supp., p. 91.

As to the case at bar this decision of the supreme court of New York is conclusive of the right of the appellant association to take a fixed premium without rendering its contract usurious; it being an elementary principle that the court of one state in construing the statutes of another state will follow the construction put on it by the courts of the state where they were enacted. *Botanico* v. *Atkinson*, 41 Miss., 188; *Browers* v. *In. Co.*, 80 Fed., 751.

The paid-up stock and interest-bearing paid-up stock authorized by its articles of association, and issued by the appellant association, is in no respect similar to the guaranty stock of the New South Building and Loan Association. The holders of either class of the paid-up stock of appellant association having no advantage or preference in any way over the holders of installment stock, either in the shareholders' meeting, in the management of the association, or in the sharing of profits.

The issuance of paid-up stock by building and loan associations is perfectly legitimate and proper. Endlich on Building Associations, sec. 464; *People* v. *Preston*, 35 N. E., 979; Thompson on Building Associations, secs. 127–130, and cases there cited.

The contract contemplates that all payments, except the

premium, shall continue until the maturity of the shares, so that under this contract it cannot be ascertained until the maturity of the shares what rate will have been paid for the loan, and it cannot be certainly said that, in the end, the borrowing shareholder will have paid more than ten per centum for his money.

Our own statutes exempts, in express terms, such associations only as are domiciled here, but we submit that it is a case where the principles of comity should apply.

There must be some element other than the taking of a rate of interest valid under the laws of New York, but greater than allowed under the laws of this state, to render the contract in this case void as being opposed to public policy. What that additional element can be in this case we fail to see. We submit that, in order to justify this court in holding that this contract is opposed to public policy, the record must show, not only that the contract would not be enforceable under the laws of Mississippi, but that it was made with intent to evade the usury laws of this state. But this unlawful intent cannot be predicated upon the facts merely that the money was loaned to a resident of Mississippi and was secured by a mortgage on lands in Mississippi, and that the contract contained a provision making it performable in New York, and the further express prvision and agreement that the contract was made with reference to and is to be governed by the laws of New York, where the association is domiciled and keeps all its funds and transacts all its business. If this were the rule, then this honorable court would not have sustained the contracts containing similar provisions and made under similar circumstances in the cases above cited, to wit: *Martin* v. *Martin*, supra; *Henry* v. *Halsey*, supra; *Robb* v. *Halsey*, supra; *Fellows* v. *Harris*, supra; *Barrettt* v. *White*, supra. The declaration contains no allegation of fraud or evasion or the violation of public policy, but stands squarely on the contract as written. *Bennett* v. *Association*, 177 Pa. St., 233, s. c. 35 Atl., 684.

If the association, by being domiciled here, could not have made and enforced its contract in Mississippi, then we could understand how it could be implied, with some force, that it operates under the laws of New York, and makes its contracts performable there for the purpose of evading the laws of this state. But this implication must fall when it is conceded that similar associations domiciled in Mississippi, are especially authorized by our statute to make and enforce the very contract at bar, without violation of our usury laws.

We insist, finally, that under the principle announced in the case of *Association* v. *Shields*, 71 Miss., 630, that the appellee, having made a voluntary settlement in full of the loan, is now estopped from maintaining this suit for payments claimed to have been made by his intestate as usurious, which he still retains and refuses to return to the association.

*G. O. Hall & Son*, for appellee.

If the transaction in question was a Mississippi contract it would be a mere waste of time to discuss principles no longer open questions in this state. *Sokoloski* v. *New South B. & L. Asso.*, 77 Miss., 155, and *Crofton* v. *New South B. & L. Asso.*, 77 Miss., 166, are decisions fixing the usurious character of this contract.

It is contended that this is a New York contract, and must be construed and its validity or invalidity determined by the laws of that state, and by the laws thereof such a provision as we have here under consideration is not prohibited. While it is true that all payments are directed to be made in the state of New York, it is further true that no such thing was in point of fact contemplated, and that never a cent of all these payments that were from time to time made was paid in New York, but to appellant's agent in the city of Meridian. It is further true that the property mortgaged was real estate situate here, and that any proceedings by the association against the borrower or against the property would of necessity have to be instituted

here and not in New York.  The manifest purpose of such a provision was to circumvent the usury laws of this state.  It is well settled that a purely personal contract, made in one place to be executed in another, is to be governed by the laws of the place of performance, but this general rule is subject to the qualification that the parties act in good faith and that the form of the transaction is not adopted to disguise its real character. Taylor on Usury, 83; *Merony* v. *Atlanta B. & L. Asso.*, 21 S. E., 924; 2 Beach on Modern Law of Contracts, 1627, note 1.

It is not permissible to loan money on real estate security, in order to defeat the usury laws of this state, to stipulate that the contract shall be tested by the laws of another state.  *Fichlity Sav. Asso.* v. *Shea*, 55 Pac., 1022.  The Texas courts hold that such a provision is a mere device to evade the usury laws. *B. & L. Asso.* v. *Griffin*, 39 S. W., 656; *P. B. & L. Asso.* v. *Bessoneth*, 41 S. W., 52.

In Kentucky the decisions are to the same effect, holding that it is not competent for a building and loan association of another state to take a mortgage on real estate in Kentucky and provide that the laws of another state shall control, and thus defeat the operation of the usury laws of Kentucky.  *Pryse* v. *P. B. & L. Asso.*, 41 S. W., 574; *Lockmane* v. *O. S. Sav. & L. Asso.*, 44 S. W., 977.

The case at bar is stronger than the Crofton case, for the reason that the borrower did, in point of fact, actually pay the prohibited rate of twelve per centum.

WHITFIELD, C. J., delivered the opinion of the court.

This case is controlled by the opinion recently delivered in the case of *Chas. R. Shannon* v. *Georgia State B. & L. Ass'n.*, *ante*, 955.  The only difference between the cases necessary to note is, that in that case the building and loan association had localized its business in this state through local boards; whereas, in this case, the appellant localized its business within this state through agents.  In all other respects the cases are substan-

tially identical, the appellee here, however, having paid, under protest, the last payment to the attorneys of the appellant. But in the one case, as in the other, the business was localized within this state, and the payments made here, in the one case to the secretary and treasurer of the local board, in the other, to an agent authorized to collect and receipt for all payments. There can be no just distinction made between the cases. This case is squarely within the principle of the cases of *U. S. S. & L. Asso.* v. *Scott*, 34 S. W. Rep., 235, and *National L. & Inv. Co.* v. *Stone*, 46 S. W. Rep., 67, in neither of which cases was there a local board, but in both of which there was a local agent such as we have here.

But the legislature of this state (laws 1890, p. 10) recognize and enforce the doctrine we herein announce, declaring that the law must be the same in the case of local agents stationed throughout the state, authorized to receive and receipt for all payments, as in the case of local boards scattered throughout the state. In both of these cases the foreign corporation was required to pay the license tax in order to do business as a building and loan association by said act of 1890. It provided: "Each building and loan association incorporated by any foreign country or other state of the union, or whose principal office and domicile are not within this state, which shall establish agencies or branches within the state, shall be liable to a separate tax on each branch office or agency, and each of said agencies or places of doing business or collecting dues shall be considered, for the purpose of taxation, as a separate and distinct building and loan association, and shall pay the tax required of building and loan associations by the act to which this is an amendment."

This provision expressly placed "each branch office" on the same footing exactly with "each agency," and each was expressly required to be dealt with as a "separate and distinct building and loan association."

*Affirmed.*